UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEREMY COOPER | No. 10 CR 50078-4<br><br>Hon. Harry D. Leinenweber |

**GOVERNMENT'S RESPONSE TO DEFENDANT
JEREMY COOPER'S MOTION FOR REDUCTION
OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby responds to defendant JEREMY COOPER'S motion for reduction of sentence under Title 18, United States Code, Section 3582(c)(1)(A). R. 741.[1] For the reasons set forth below, the government respectfully submits that defendant's motion should be denied.

**I.      Factual Background**

On May 1, 2012, a third superseding indictment (hereafter "indictment") was returned charging Cooper and four codefendants (Steven McDowell, Robert Presley, Norman Breedlove, and Melvin Jordan) with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C.

---

[1] Citations to the criminal record are cited as "R." followed by the docket number. Citations to the transcript of Cooper's sentencing hearing (R. 418) are designated as "S. Tr.," and citations to the Presentence Investigation Report (R. 292) are designated as "PSR."

§ 846 (Count 1). R. 151. The indictment also charged Cooper with four counts of distributing heroin (Counts 12, 13, 17, and 18), possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g) (Count 19), and possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 20). *Id.* On June 14, 2012, following an 8-day trial, a jury convicted Cooper of the conspiracy charge, all four heroin distribution charges, and the charge for possessing a firearm as a felon. R. 264.

The evidence at trial showed that Cooper, Presley, McDowell, and McDowell's brother Murray Harris were purchasing heroin from Chicago twice per week, and using McDowell's mother's apartment on Longwood Street to mix and package the heroin for sale.[2] They sold heroin and other drugs to customers from the Longwood Street apartment and from rental cars parked in the parking lot of that apartment. Cooper and his coconspirators also used an apartment on Chestnut Street to conduct drug-trafficking activities. The Chestnut Street apartment was searched in October 2010, and Cooper was found inside along with a gun, cell phones, several packets of heroin, and drug packaging materials. The evidence at trial also included evidence regarding controlled purchases of heroin from Cooper.

The evidence showed that, on December 1, 2020, Cooper and Presley got into a shootout outside the Longwood Street apartment. One of their customers traded a

---

[2] The evidence at trial relating to Cooper is summarized in the Seventh Circuit's opinion affirming Cooper's and McDowell's convictions and sentences. *United States v. Cooper,* 767 F.3d 721 (7th Cir. 2014).

bag of guns to Cooper and Presley in exchange for drugs and money. And when the customer's son tried to get the guns back, Cooper refused and a shootout ensued. After the shootout, crime scene investigators collected 9 spent shell casings from a .45 caliber handgun, and the shell casings were later determined to have been fired from a handgun recovered the next day from a rental car Cooper was driving. Law enforcement conducted a controlled purchase of heroin from Cooper from that vehicle, in which Presley was a passenger, and arrested Cooper and Presley shortly thereafter.

Law enforcement officers subsequently searched the hotel rooms at which Cooper and Presley were staying. Cooper's girlfriend at the time, Kelley Coleman, was in Cooper's hotel room at the time. During the search of the room, law enforcement officers recovered 13 baggie corners containing heroin, empty plastic baggies, a .40 caliber handgun, an ammunition clip that matched the model and caliber of the handgun recovered from the vehicle Cooper was driving. Law enforcement officers also recovered a digital camera from Cooper's hotel room, and a video recovered from the memory of the camera showed Cooper handling piles of money and making slang references to drug trafficking.[3] Law enforcement officers also found digital scales, bottles of a substance commonly used to "cut" heroin, grinders, and other evidence of drug trafficking.

Cooper was sentenced in September 2012. R. 310. During the sentencing

---

[3] Defendant stated during his allocution at sentencing that the money was counterfeit. S. Tr. 26.

3

hearing, the district court found that Cooper was responsible for more than one but less than three kilograms of heroin, resulting in a base offense level of 32. S. Tr. at 19-20. The district court also applied a two level enhancement for the possession of a weapon, resulting in a total offense level of 34. *Id.* at 20. With a criminal history category of V, Cooper's advisory sentencing guidelines range was 235 to 293 months' imprisonment. *Id.*

During the sentencing hearing, the district judge considered as mitigating factors Cooper's difficult upbringing, his remorse, his family support, his willingness to seek treatment for his substance abuse and gambling problems, and a letter of support written by a defendant charged in a separate case. *Id.* at 29. The district court, however, also considered the "very many aggravating factors" in the case. *Id.* The district court noted that Cooper had unsatisfactorily completed a previous probation term imposed for delivery of a controlled substance, he was on probation when he committed a prior offense of possessing a firearm as a felon, and he was on parole when committed another offense for delivery of a controlled substance. *Id.* As the district court recognized, Cooper had displayed "inveterate, persistent criminal behavior, and there [was] an urgent need for specific deterrence." *Id.* at 30. The district court also noted that Cooper's chronic substance abuse issues, sparse employment history, and prior gang affiliation were aggravating factors. *Id.* The district court considered Cooper's family circumstances, including his young children, in weighing the § 3553(a) factors, but found that those circumstances did not warrant a below guidelines sentence, in part because Cooper knew the detrimental effect that

4

his criminal activity could have on his children. *Id.* at 32. The court also determined that the nature and circumstances of the offense showed that a below-guidelines sentence was not warranted. *Id.* at 31-32. The court ultimately sentenced Cooper to 270 months' imprisonment on the conspiracy count and shorter sentences on the remaining counts, to be served concurrently. R. 312.

Cooper's conviction and sentence were affirmed on appeal. *Cooper,* 767 F.3d at 734. In 2015, Cooper's sentence was reduced to 216 months' imprisonment, pursuant to Amendment 782 to the Sentencing Guidelines and 18 U.S.C. § 3582(c)(2). R. 586. According to the Bureau of Prisons' records, Cooper's projected release date is October 5, 2026.

In August 2019, Cooper submitted a request to the Warden of Elkton FCI for compassionate release based on the incarceration of a family member caregiver, specifically Kelley Coleman, the mother of Cooper's children. On October 11, 2019, Cooper filed the pending motion for compassionate release with the court, pursuant to 18 U.S.C. § 3582(C)(1)(A). R. 741. Cooper argues that he should be released because, at the time Cooper filed his motion, Coleman was in pretrial detention on charges pending in the Circuit Court of Will County, Illinois.

Records obtained from the Bureau of Prisons show that the Warden denied Cooper's request for compassionate release on October 11, 2019. *See* **Exhibit A**. The denial letter noted that the Warden would not recommend a reduction in Cooper's sentence due to, among other things, his history of possessing firearms, the nature of his offense of conviction, the fact that he reported not spending quality time with his

5

children prior to his incarceration, and his lack of verifiable employment history. *Id.*

The government recently reviewed online records relating to Coleman's charges in the Circuit Court of Will County. *See* **Exhibit B**.[4] According to the online records, Coleman pled guilty to one count of aggravated domestic battery on January 24, 2020, and the court sentenced Coleman to 180 days' jail and 30 months' probation. *Id.* The remaining charges brought against Coleman were nolle prossed. Coleman was credited for 180 days' time served, and according to the online docket, Coleman was ordered released from custody on January 24, 2020. *Id.*

## II. First Step Act

Section 603(b) of the First Step Act, amended 18 U.S.C. § 3582(c)(1)(A), which allows a sentencing court to reduce an imposed sentence upon a showing of either: (1) "extraordinary and compelling reasons" warranting a reduction; or (2) that the defendant is at least 70 years old, has served at least 30 years in prison pursuant to a sentence under 18 U.S.C. § 3559(c), and the Bureau of Prisons Director has determined that the defendant is not a danger to the safety of any other person or the community. 18 U.S.C.§ 3582(c)(1)(A)(i) & (ii). First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5220 (2018). A defendant may seek compassionate release directly from the court, but only after the defendant "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

---

[4] Attached as **Exhibit B** are printouts of case records available online through the Will County Circuit Court's website. The government is requesting certified records from Will County Circuit Court, and will supplement the record upon receipt.

6

on [his] behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier . . . ." *See* 18 U.S.C. § 3582(c)(1)(A). In this case, Cooper filed the pending motion after more than 30 days after the Warden of his facility received Cooper's request for compassionate release.

With respect to the merits, "the First Step Act did not change the standards for compassionate release. Relief is available where the proposed sentence reduction is supported by: (1) 'extraordinary and compelling reasons;' (2) 'applicable policy statements issued by the Sentencing Commission[;]' and (3) 'the factors set forth in [18 U.S.C. §] 3553(a).'" *United States v. Willis*, No. 15 CR 3764, 2019 WL 2403192, at *2 (D.N.M. June 7, 2019). In application note 1 to Guideline § 1B1.13, the Commission set forth several circumstances that may warrant "extraordinary and compelling reasons" for a sentence reduction, including a medical condition, defendant's age, defendant's family circumstances, or other reasons. The family circumstances enumerated in the Sentencing Commission's policy statement are "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt., n. 1(C). The Sentencing Commission's policy statement regarding such reductions also directs the court to consider community safety. *See* U.S.S.G. § 1B1.13(b)(2) (listing as a criteria that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)").

The factors set forth in Section 3553(a) include the nature and circumstances

7

of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

In addition, the Bureau of Prisons has published a Program Statement to describe the factors it evaluates to implement compassionate release/reductions in sentences:[5]

- Nature and circumstances of the inmate's offense;
- Criminal history;
- Comments from victims;
- Unresolved detainers;
- Supervised release violations;
- Institutional adjustment;
- Disciplinary infractions;
- Personal history derived from the PSR;
- Length of sentence and amount of time served;
- Inmate's current age;
- Inmate's age at the time of offense and sentencing;
- Inmate's release plans (employment, medical, financial); and
- Whether release would minimize the severity of the offense.

---

[5] *See* BOP Program Statement Number 5050.50 dated January 17, 2019 available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited on January 29, 2019). These factors and circumstances overlap with those set forth in Title 18, United States Code, Section 3553(a), and the government submits that they are appropriate for the Court to consider in ruling on defendant's motion for compassionate release.

8

### III.  Argument

Cooper has failed to establish that a reduction in his sentence is warranted for multiple reasons. As an initial matter, the sole basis of Cooper's motion, specifically the incarceration of Coleman, no longer exists. Will County Circuit Court online records show that Coleman was sentenced to effectively time served followed by a term of probation and has been released from custody. Pending verification through certified records from Will County Circuit Court, Cooper's motion should be denied on this ground alone.

Even if Coleman has not been released from custody, moreover, Cooper's motion should be denied because the temporary "incapacitation" of Coleman does not rise to the level of "extraordinary and compelling reasons" sufficient to warrant release as contemplated by the First Step Act. *See Willis*, 2019 WL 2403192, at *3 ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions [a]s . . . a rare event.") (internal quotation marks omitted). Cooper's mother has been caring for Cooper's minor children during Coleman's incarceration, and Cooper does not claim that his mother's care of his children has been inadequate in any way.

Cooper claims that his mother is in poor health and is not capable of caring for the children "long term," but the only documentation Cooper provides to support this claim is summary of a clinic consultation in July 2019, which listed his mother's medical conditions as being "stable," "improved," and "unchanged." The letter from Cooper's mother that is attached to Cooper's motion also does not establish that she

9

cannot adequately care for the children. Cooper's mother notes that she has "a heart condition so [Cooper's] help to assist with transporting the children will be greatly appreciated." Aside from this comment, though, the letter does not mention any issues preventing his mother from adequately caring for the children presently or in the near future. Cooper also notes that the children may be removed from his mother's custody if his mother "suffer[s] a negative change in her health conditions, while she attempts to care for the children." But Cooper provides no basis to believe that such a change is likely or imminent. Speculation about Cooper's mother's future health and ability to care for his children long term does not rise to the level of "extraordinary and compelling reasons" warranting release, especially in light of Coleman's recent release from custody.

Furthermore, other factors weigh strongly against a sentence reduction in this case. Cooper committed very serious offenses distributing and conspiring to distribute a dangerous, highly addictive, and potentially deadly substance into the streets of Rockford. The dangers of Cooper's offenses, moreover, extend beyond the harms associated with the substances being distributed, and include the violence that commonly goes hand in hand with drug-trafficking conspiracies. Indeed, Cooper not only possessed a firearm, he traded drugs for guns as part of the conspiracy, and he was involved in a shootout outside the conspiracy's stash house. In addition, Cooper had two prior convictions for delivery of a controlled substance and a prior conviction for possessing a firearm as a felon, showing a pattern of drug trafficking and weapons

10

possession.[6] PSR 13-17. Cooper committed felonies, including the offenses of conviction in this case, while on parole for prior offenses, *id.*, and had a number of additional arrests dating back to age 11. PSR 17-19. He started selling drugs by the age of 12 or 13, joined the Black Disciples street gang at age 13, and remained in the gang for several years. PSR at 22. He claimed that he left the gang in 2009, *id.*, but he certainly did not leave behind his criminal behavior. He had no verified employment prior to his arrest, PSR 25-26, and as noted in the Bureau of Prisons letter denying his request for release, he reported not spending quality time with his children prior to his arrest, PSR at 23.

According to Bureau of Prisons records, Cooper does not have an extensive history of disciplinary infractions, but he was disciplined in November 2018 for possessing a phone charger and unauthorized item hidden in his cell and in April 2013 for possessing stolen property. Cooper has completed several training programs while in the Bureau of Prisons, as demonstrated by the certificates attached to his motion. Cooper may now be making good use of his time in the Bureau of Prisons to make himself a better person, and he should continue to do that while serving his prison sentence. Cooper's efforts will benefit him when he is released at the expiration of his term, but his rehabilitative efforts do not outweigh the remaining § 3553(a)

---

[6] The government notes that the Illinois Supreme Court later determined that the State's felon-in-possession statute was unconstitutional. The change in law, however, does not mitigate the significant of Cooper's history of weapons possession.

factors, including the serious nature of Cooper's offenses and his history of weapons possession and recidivism.

## V. Conclusion

For the reasons set forth above, the government respectfully requests that this Court deny Cooper's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Date: January 29, 2020                    Respectfully submitted,

                                              JOHN R. LAUSCH, JR.
                                              United States Attorney

                      By:    */s/ Talia Bucci*
                            TALIA BUCCI
                            Assistant United States Attorney
                            327 South Church Street, Suite 3300
                            Rockford, Illinois 61101
                            (815) 987-4451

## CERTIFICATE OF SERVICE

I, TALIA BUCCI, hereby certify that, on January 29, 2020, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**GOVERNMENT'S RESPONSE TO DEFENDANT
JEREMY COOPER'S MOTION FOR REDUCTION
OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)**

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by mail to the following non-ECF filer:

Jeremy Cooper
#42983-424
Elkton F.C.I.
P.O. Box 10
Lisbon, OH 44432

  _/s/ Talia Bucci_____
TALIA BUCCI
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, Illinois 61101
(815) 987-4444